# 26-666-cv

## United States Court of Appeals

*for the*

## Second Circuit

CERTAIN BURLINGAME AND SCHNEIDER PLAINTIFFS,

*Plaintiffs-Appellants,*

— v. —

NON-OBJECTING PLAINTIFFS,

*Plaintiffs-Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF FOR PLAINTIFFS-APPELLANTS

JOHN FRANCIS SCHUTTY III
LAW OFFICE OF JOHN F. SCHUTTY, P.C.
*Attorneys for Plaintiffs-Appellants*
445 Park Avenue, 9th Floor
New York, New York 10022
(646) 345-1441
john@johnschutty.com

CP COUNSEL PRESS   (800) 4-APPEAL • (392688)

**TABLE OF CONTENTS**

JURISDICTIONAL STATEMENT ......................................................................... 1

    1.  District Court Jurisdiction .................................................................. 1

    2.  Appellate Jurisdiction ....................................................................... 1

    3.  Timeliness of Appeal ........................................................................ 1

STATEMENT OF ISSUES PRESENTED ............................................................. 2

STATEMENT OF THE CASE .............................................................................. 3

    I.  Nature of the Case and Procedural History ........................................ 3

    II.  Disposition Below ............................................................................. 3

    III. Citation to Decision ......................................................................... 4

    IV. Statement of Facts ............................................................................ 6

        A.  The District Court Determined that New Federal Common Law Was Needed to Determine Who May Claim FSIA Solatium Wrongful Death Damages ............................................................................. 7

        B.  Many Plaintiffs Are Added to the 9/11 MDL Litigation Against Iran Starting in 2015 ............................................................................. 8

        C.  Awards to the Plaintiffs Herein ................................................. 10

        D.  Obtaining Satisfaction on Iran Awards – the USVSST Fund .................... 11

        E.  Obtaining Satisfaction on Iran Awards – Pursuit of Iranian Assets ........... 15

SUMMARY OF THE ARGUMENT ...................................................................... 16

    I.  The District Court Improperly Granted Default Judgments to Plaintiffs Who Failed to Satisfy the FSIA Statute of Limitations ............................... 16

II.  The District Court Wrongfully Awarded Wrongful Death Damages to Non-Heirs of Decedents in Violation of State Law ...................................... 17

ARGUMENT ........................................................................................................ 18

I.  The District Court Erred as a Matter of Law by Holding that a Foreign State's Default Relieves the Court of Its Mandatory Gatekeeping Duty Under 28 U.S.C. § 1608(e) ............................................................................ 19

   A.  A Plaintiff Cannot Establish a "Right to Relief" Under § 1608(e) Where the Face of the Complaint Reveals the Action Is Barred by the Ten-Year Statute of Limitations in 28 U.S.C. § 1605A(b). ................ 23

   B.  Because the Underlying Incident Occurred in 2001 and Many of the Complaints Were Not Filed Until Many Years after September 11, 2011, the District Court Lacked the Statutory Authority to Validate these Late-Filed Claims by Entering Default Judgments ........... 24

II.  The District Court Erred by Displacing State Law with Federal Common Law to Award Solatium Damages to Non-Heirs in Violation of 28 U.S.C. § 1606. ................................................................................ 28

   A.  Background on the FSIA. ......................................................................... 28

   B.  Section 1606 of the FSIA ........................................................................ 29

   C.  The § 1605A(c) Terrorist Exception Cause of Action .............................. 32

   D.  The District Court Did Not Apply Choice-of-Law Principles & Instead Created Liability Forbidden by the Forum States ........................ 36

     1.  New York's Interest Analysis Favors Domiciliary Law for Loss Allocation ......................................................................................... 36

     2.  State Law Expressly Prohibits Grief Damages for Non-Heirs .............. 37

     3.  IIED Cannot be Used to Circumvent Loss-Allocation Rules ............... 37

     4.  Applicability of State Law to 9/11 FSIA Wrongful Death Claims ....... 39

5. Like the FTCA, the FSIA Requires the Application of Existing Law. ...................................................................................... 41

6. Section 1605A Does Not Require a Uniform Wrongful Death Remedy ................................................................................... 47

7. Federal Common Law Is Not Needed in Section 1605A Cases. .......... 47

III. Plaintiffs Herein Have Standing to Challenge the Default Judgments to Other Plaintiffs, Especially Because Counsel for the Appellees Have a Patent Conflict-of Interest ................................................................. 49

CONCLUSION ................................................................................................. 53

CERTIFICATE OF COMPLIANCE ................................................................ 54

SPECIAL ADDENDUM ................................................................................. 55

I. 28 U.S.C. § 1605(A)(b and c) ................................................................ 55

II. 28 U.S.C. § 1608(e) ............................................................................... 56

# TABLE OF AUTHORITIES

**CASES**

*Amernational Indus., Inc. v. Action-Tungsram, Inc.*, 925 F.2d 970 (6th Cir.).........21

*Arizona v. California*, 530 U.S. 392 (2000) ...........................................................26

*B.F. Goodrich v. Betkoski*, 112 F.3d 88 (2d Cir. 1997).............................................48

*Ben-Rafael v. Islamic Republic of Iran*, 718 F. Supp. 2d 25 (D.C. 2010) ...............23

*Bettis v. Islamic Republic of Iran*, 315 F.3d 325 (D.C. Cir. 2003)..........................31

*Bland v. Islamic Republic of Iran,* 831 F. Supp. 2d 150 (D.D.C. 2011)..................34

*Boyle v. United Tech. Corp.,* 487 U.S. 500 (1988)....................................................48

*Brown v. NYC Health & Hosps. Corp.*, 225 A.D.2d 36 (1st Dept. 1996) ...............40

*Burks v. Lasker*, 441 U.S. 471 (1979) .......................................................................31

*Cassirer v. Thyssen-Bornemisza Collection Foundation,*
   596 U.S. 107 (2022)..........................................................................................passim

*Celestine v. Mount Vernon Neighborhood Health Ctr.*,
   403 F.3d 76 (2d Cir. 2005) ...................................................................................22

*Chevron Corp. v. Naranjo*, 667 F.3d 232 (2d Cir. 2012) .......................................19

*Cinema 5 Ltd. v. Cinerama, Inc.*, 528 F.2d 1384 (2d Cir.1976).............................52

*Com. Bank of Kuwait v. Rafidain Bank*, 15 F.3d 238 (2d Cir. 1994)...............passim

*Delta Savings Bank v. United States*, 265 F.3d 1017 (9th Cir. 2001).....................43

*DeLuca v. Gallo*, 287 A.D.2d 222 (2d Dept. 2001) ...............................................39

*Doe v. Bin Laden*, 663 F.3d 64 (2d Cir. 2011) .......................................................35

iv

*Dorking Genetics v. United States*, 76 F.3d 1261 (2d Cir. 1996) ........................... 42

*Ellul v. Congregation of Christian Bros.*, 774 F.3d 791 (2d Cir. 2014) ................... 9

*Est. of Hirshfeld v. Islamic Repub. of Iran*, 330 F. Supp.
3d 107 (D.D.C. 2018) ..................................................................... 36, 45

*Estates Theatres, Inc. v. Columbia Pictures Indus., Inc.*,
345 F. Supp. 93 (1972) ................................................................... 52

*Ex parte Burr*, 22 U.S. 529 (1824) .................................................... 52

*Fed. Deposit Ins. Corp. v. Meyer*, 510 U.S. 471 (1994) ........................... 43

*Federal Republic of Germany v. Philipp*, 592 U.S. 169 (2021) ................ 39

*First Fidelity Bank, N.A. v. Gov't of Ant. & Barb.--Permanent Mission*,
877 F.2d 189 (2d Cir. 1989) ......................................................... 20, 21

*First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba*,
462 U.S. 611 (1983) ..................................................................... 31

*Fraenkel v. Islamic Republic of Iran*, 892 F.3d 1282 (D.C. Cir. 2018) ............. 19, 32

*Harris v. Polskie Linie Lotnicze,* 820 F.2d 1000 (9th Cir. 1987) ............. 43

*The Harrisburg*, 119 U.S. (1886) ...................................................... 30

*Hoglan v. Rafsanjani*, 759 Fed. Appx. 99,
2019 WL 169203 (2d Cir. 2019) .................................................... 31

*Hume v. Bayer*, 178 N.J. Super. 310 (Law Div. 1981) ........................... 40

*In re Air Crash Disaster at Stapleton Int'l Airport*,
720 F. Supp. 1445 (D. Colo. 1988) ................................................. 47

*In re "Agent Orange" Prods. Liab. Litig.*,
996 F.2d 1425 (2d Cir. 1993) ....................................................... 25, 50

*In re World Trade Center Disaster Site Lit.,*
769 F. Supp. 2d 650 (S.D.N.Y. 2011)...................................................51

*In re Zyprexa Prods. Liab. Litig.,* 451 F. Supp. 2d 458 (E.D.N.Y. 2006)...............49

*Johnson v. State of New York*, 37 N.Y.2d 378 (1975)...........................................40

*Ladd v. Douglas Trucking Co.*, 203 Conn. 187 (1987) ...........................................41

*Lauer v. City of New York*, 240 A.D.2d 543 (1st Dep't 1997) ...............................46

*Liff v. Schildkrout*, 49 N.Y.2d 622 (1980) ...........................................................40

*Link v. Wabash R.R. Co.*, 370 U.S. 626 (1962) .....................................................27

*Maalouf v. Islamic Republic of Iran,* 923 F.3 1095 (D.C. Cir. 2019) ..........passim

*McDougald v. Garber*, 73 N.Y.2d 246 (1989) ......................................................40

*Mobil Oil Corp. v. Higginbotham*, 436 U.S. 618 (1978)........................................30

*Murphy v. Islamic Republic of Iran*, 778 F. Supp. 2d 70 (D.D.C. 2011) ...............26

*Neumeier v. Kuehner*, 31 N.Y.2d 121 (1972)........................................................37

*O'Melveny & Myers v. FDIC,* 512 U.S. 79 (1994)............................................47, 48

*Owens v. Republic of Sudan,* 864 F.3d 751 (D.C. Cir. 2017).................................34

*Pescatore v. Pan Am. World Airways, Inc.*, 97 F.3d 1 (2d Cir. 1996).........31, 35, 47

*Petersen Energía Inversora S.A.U. v. Argentine Republic,*
895 F.3d 194 (2d Cir. 2018) ...........................................................................22

*Schwarder v. United States*, 974 F.2d 1118 (9th Cir. 1992)...................................42

*Shiekh v. Republic of Sudan*, 308 F.Supp.3d 46 (D.D.C. 2018), *rev'd
on other grounds by, Maalouf v. Republic of Iran,* 923 F. 3d 1095
(D.C. Cir. 2019)................................................................................................26

*Smalls v. Collins*, 10 F.4th 117 (2d Cir. 2021) .......................................................9

*Soriano v. United States*, 352 U.S. 270 (1957) ........................................................ 22

*Stanley v. City of New York*, 2020 N.Y. Misc. LEXIS 20353
   (Sup. Ct. N.Y. Cty. 2020) ........................................................................... 45

*Texas Industries, Inc.* v. *Radcliff Materials, Inc.*, 451 U.S. 630 (1981) .................. 41

*Travelers Ins. Co. v. Carpenter*, 411 F.3d 323 (2d Cir. 2005) ................................ 45

*U.S.A. v. Approximately 127,271 Bitcoin*, 25-cv-05745 (RPK) (EDNY).................. 9

*United States v. Kimbell Foods, Inc.*, 440 U.S. 715 (1979) ..................................... 39

*United States v. Kubrick*, 444 U.S. 111 (1979) ....................................................... 22

*Valore v. Islamic Republic of Iran*, 700 F. Supp. 2d 52 (D.D.C. 2010) ............ 26, 34

*Vera. v. Banco Bilbao Vizcaya Argentaria, S.A.*,
   946 F.3d 120, (2d Cir. 2019) ....................................................................... 24

*Wamai v. Republic of Sudan,* 60 F. Supp. 3d 84 (D.D.C. 2014) ............................. 34

*Wiederspan v. Republic of Cuba*, 246 F. Supp. 3d 873 (S.D.N.Y 2017).................. 22

*Wolkstein v. Morgenstern*, 275 A.D.2d 635 (1st Dep't 2000)................................. 45

*Wood v. Milyard*, 566 U.S. 463 (2012) ................................................................... 26

*Woodward Governor Co. v. Curtiss Wright Flight Sys., Inc.*,
   164 F.3d 123 (2d Cir. 1999) ........................................................................ 48

**STATUTES**

28 U.S.C. § 1291 ...................................................................................................... 1

28 U.S.C. § 1330 .................................................................................................... 19

28 U.S.C. § 1331 ...................................................................................................... 1

28 U.S.C. § 1346 .................................................................................................... 41

28 U.S.C. § 1346(b) ............................................................ 43, 44

28 U.S.C. § 1605 ......................................................... 22, 29, 33, 34

28 U.S.C. § 1605(a)(2) ............................................................ 29

28 U.S.C. § 1346(b) ............................................................ 43, 44

28 U.S.C. § 1605(a)(5) ............................................................ 29

28 U.S.C. § 1605(a)(7) ................................................... 23, 32, 36

28 U.S.C. § 1605A ......................................................... passim

28 U.S.C. § 1605A(b) ..................................................... passim

28 U.S.C. § 1605A(c) ..................................................... passim

28 U.S.C. § 1605B ............................................................... 9

28 U.S.C. § 1606 ......................................................... passim

28 U.S.C. § 1607 ......................................................... 22, 29, 33

28 U.S.C. § 1608(e) ..................................................... passim

28 U.S.C. § 2671 ............................................................... 41

28 U.S.C. § 2674 ............................................................ 42, 43

28 U.S.C. §§ 1602–1611 ....................................................... 19

29 U.S.C. § 1083(c) ........................................................... 23

34 U.S.C. § 20144 ............................................................. 11

34 U.S.C. § 20144 (e)(6) ....................................................... 12

34 U.S.C. § 20144(d)(3)(A)(i) .................................................. 12

viii

34 U.S.C. § 20144(j)(3) ...................................................................... 11

Conn. Gen. Stat. § 45a-437 ............................................................... 40

Conn. Gen. Stat. § 45a-448(b) .......................................................... 40

Conn. Gen. Stat. § 52-555 ................................................................. 40

N.J. State Ann. § 2A:31-2 .................................................................. 40

N.J. State Ann. § 2A: 31-4 ................................................................. 40

N.J. State Ann. § 3B: 5-3 ................................................................... 40

N.Y. Estate Powers & Trusts Law § 4-1.1(a)(1) ............................... 39

N.Y. Estate Powers & Trusts Law § 5-4.1 ........................................ 40

N.Y. Estate Powers & Trusts Law § 5-4.4 ........................................ 39

**RULES**

22 N.Y.C.R.R § 1200.7(a)(1) ............................................................ 50

Fed. R. App. P. 4(a) ............................................................................. 1

Fed. R. Civ. P. 15(c)(1)(C) ................................................................ 23

Fed. R. Civ. P. 54(b) ........................................................................... 1

Fed. R. Civ. P. 55(d) .......................................................................... 21

Fed. R. Civ. P. 55(e) ........................................................................... 21

Fed. R. Civ. P. 60(b)(4) ..................................................................... 22

Fed. R. Civ. P. 60(6) .......................................................................... 22

**SECONDARY AUTHORITIES**

Restatement (Second) of Torts § 46(1) ...................................................... 45

Restatement (Second) Torts § 46(2) ......................................................... 45

Restatement (Third) of the Law Governing Lawyers § 128 .................................. 52

**LEGISLATIVE HISTORY**

122 Cong. Rec. 17462 (June 10, 1976) ...................................................... 29

122 Cong. Rec 17468 (June 10, 1976) ....................................................... 42

H.R. Rep. No. 94-1487 (1976) ...................................................... 29, 30, 42

H.R. Rep. No. 104-383 (1996) ............................................................... 36

H.R. Rep. No. 110-477 (2008) ............................................................... 33

**OTHER AUTHORITIES**

Alvin K. Hellerstein, *Presiding Over Mass Tort Litigation to Enhance Participation and Control by the People Whose Claims Are Being Asserted*, 45 Colum. J.L. & Soc. Problems 473 (2012) ....................................... 52

Lord Campbell's Act (1846) ................................................................. 30

*The Foreign Sovereign Immunities Act, A Guide for Judges,* Federal Judicial Center (2d ed. 2018) ................................................... 36

## JURISDICTIONAL STATEMENT

### 1. District Court Jurisdiction

The U.S. District Court for the Southern District of New York has subject matter jurisdiction over this litigation pursuant to 28 U.S.C. § 1331 because the actions filed against the defendant Islamic Republic of Iran ("Iran") arise under the laws of the United States, specifically the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1605A(c).

### 2. Appellate Jurisdiction

This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291, which confers jurisdiction over all final decisions of the district courts. This appeal is from compensatory damage awards issued against Iran that were certified as "final" by the District Court pursuant to Fed. R. Civ. P. 54(b).

### 3. Timeliness of Appeal

This appeal is timely. The District Court entered its Rule 54(b) certifications of the damage awards against Iran on March 18, 2026. Plaintiffs filed their Notice of Appeal on March 18, 2026, which is within the 30-day period prescribed by Fed. R. App. P. 4(a).

## STATEMENT OF ISSUES PRESENTED

In this twenty-three-year-old litigation concerning the terrorist events of September 11, 2001, the District Court applied the FSIA to issue default judgments against defendant Iran awarding billions of dollars to wrongful death and personal injury plaintiffs. Many actions against Iran were filed by plaintiffs long after the FSIA's ten-year statute of limitations had expired. Many plaintiffs who received solatium damage awards are not wrongful death heirs under applicable state law.

1. Whether the District Court violated its mandatory duty under 28 U.S.C. § 1608(e) by entering default judgments against a foreign state (Iran) without first determining that the plaintiffs established a "right to relief," where thousands of claims—arising from a September 11, 2001 incident but not filed until long after September 11, 2011—were barred on their face by the ten-year statute of limitations in § 1605A(b)?

2. Whether the District Court violated 28 U.S.C. § 1606 and Supreme Court precedent in *Cassirer* by displacing the restrictive wrongful death laws of New York, New Jersey, and Connecticut with the Restatement (Second) of Torts and by awarding solatium damages against Iran to non-heirs (*e.g.*, parents and siblings) who would be barred from recovery in a suit against a private defendant (*e.g.,* where a decedent is survived by a spouse and children)?

**STATEMENT OF THE CASE**

**I.      Nature of the Case and Procedural History**

This is an appeal from thousands of "Partial Final [Default] Judgments" issued against defendant Iran, certified as "final" by the U.S. District Court for the Southern District of New York (Hon. George B. Daniels) on March 18, 2026.  Plaintiffs herein[1] initiated their actions against Iran on September 10, 2002, alleging wrongful death claims arising out of § 1605A of the FSIA and applicable state law (A. 210).

**II.      Disposition Below**

The District Court issued several Memoranda Decisions & Orders ("MDOs") granting motions relating to Defendant Iran's liability and plaintiffs' damages. Plaintiffs here appeal from certain MDOs (and resulting default judgment damages awarded under the FSIA), which have seriously reduced their recovery of damages.

---

[1]      Plaintiffs-Appellants herein were part of the original *Burlingame* Complaint, styled *Burlingame. v. Bin Laden,* filed on September 10, 2002, bearing civil action no. 02-cv-7230, or the *Schneider* Complaint, styled *Schneider v. al Qaeda Islamic Army,* also filed on September 10, 2002, bearing civil action no. 02-cv-7209.  These Plaintiffs remain segregated in the consolidated *Ashton* filings under their original civil action number and thus can easily be identified.  The Plaintiffs represented on this appeal are: [*Burlingame*] Irene Dickey, Joseph Dickey Jr., Elizabeth Dickey, Joanne Kelly, Erin Kelly, Brianne Kelly, Kaitlyn Kelly, Colleen Kelly, Eileen Lynch, Anne Lynch, Kathleen Lynch, Meaghan Lynch, Lisa O'Brien, John O'Brien, Madeline O'Brien, Jaqueline O'Brien, Dara Seaman, Michaella Seaman, Mary Seaman, Edward Seaman, Susan Sliwak, Ryan Sliwak, Kyle Sliwak, Nicole Sliwak, Allison Wallice, John Wallice, Christian Wallice, and Patrick Wallice, and [*Schneider*] Nancy Dimino and Sabrina Dimino (hereinafter "Plaintiffs").

## III.    Citation to Decision

Defendant Iran never appeared to answer the Complaints filed in this multidistrict litigation.  In 2011, the District Court assessed Iran's role in facilitating the 9/11 Attacks and found that Iran waged an "undeclared war" on the United States "through asymmetrical[] or unconventional strategies and terrorism" via "proxies such as . . . al Qaeda."  MDL ECF #2515, p.6.  Iran's "material support" for al Qaeda, the Court concluded, proximately caused the 9/11 Attacks.  *Id.,* p.50.  This finding is not challenged on this appeal.

In 2012, the District Court established a damages framework designed to compensate the estates of those who were killed in the 9/11 Attacks, as well as "those [family members] whose immediate relatives lost their lives as a result of the terrorists' acts."  Report & Recommendation ("R&R") at 1, MDL ECF #2618, adopted by MDO MDL ECF #2623.  As developed by the District Court, this framework arose solely out of § 1605A of the FSIA, which allows United States nationals to recover "economic damages, solatium, pain and suffering, and punitive damages" from foreign sovereign defendants under a "terrorism exception" to foreign sovereign immunity (with the Court finding no alleged need to consider state wrongful death law).  28 U.S.C. § 1605A(c).  MDO dated Oct. 3, 2012 (MDL ECF#2623) (A. 123).

The District Court thereafter issued a series of Orders (over many years) to various plaintiffs awarding damages for personal injuries, and/or wrongful death damages to the families of decedents for: the decedents' conscious pain and suffering, the solatium (grief) damages suffered by various family members, and the economic loss damages suffered by the decedents' Estates. It is undisputed that: (1) the great majority of the plaintiffs filed their actions against Iran more than ten years after the relevant terrorist acts occurred, and (2) that many of the plaintiffs who received wrongful death damage awards were not qualified "heirs" under applicable state law. Thus, many of the compensatory damage awards issued against Iran are challenged.[2]

Responding to Plaintiffs' objections to the District Court's refusal to dismiss claims filed after the FSIA's ten-year bar, the District Court held that "it is reversable [sic] error for a district court to invoke the statute of limitations on behalf of a defaulting defendant in the terrorism context," citing *Maalouf v. Islamic Republic of Iran*, 923 F.3 1095, 1114–15 (D.C. Cir. 2019). R&R dated March 15, 2023 at 9

---

[2]  *See, e.g.,* the following illustrative Complaints filed against Iran long after September 11, 2011, and Partial Final Judgments ("PFJ") showing awards to untimely plaintiffs and non-heirs: *Burnett v. The Republic of Iran,* 15-cv-09903, ECF#1 dated 12/18/15 (PFJ: MDL ECF #3666); *Aamoth v. The Republic of Iran*, 18-cv-12276, ECF #1 (PFJ: MDL ECF #5050); *Mellon v. The Republic of Iran,* 19-cv-11767, ECF#5 (PFJ: MDL ECF #7522); *see also* excerpts from the SDNY Docket Sheet for *O'Neill v. The Republic of Iraq,* 04-cv-1076 (GBD)(SN) (A. 63: showing that thousands of *O'Neill* plaintiffs were added to the litigation against Iran between May 17 and May 30, 2022).

(MDL ECF#8929); *see also* Motion to Set Aside re: Objection to R&R on March 28, 2023 (MDL ECF##8959, 8960, and 8961), and MDO dated March 30, 2023 (MDL ECF#8973) (against the Taliban) ("Because the statute of limitations is "an affirmative defense that is waived [or forfeited] if not raised," … and a district court raising the defense *sua sponte* is disfavored, this Court declines to dismiss *sua sponte* claims by other Plaintiffs against the Taliban as time-barred.").

## IV. Statement of Facts

This multidistrict litigation has been pending in the Southern District of New York (SDNY) since 2003. Many of the original actions filed against Iran, before the MDL transfers, were filed in 2002. Plaintiffs seek to hold various individuals, organizations, and foreign states accountable for their alleged roles in sponsoring or providing material support to the al-Qaeda hijackers who engaged in a coordinated terrorist attack upon the World Trade Center and Pentagon.

Plaintiffs herein all filed timely lawsuits against Iran in 2002, and all are authorized "heirs" under their respective state's wrongful death law. It has taken these Plaintiffs over twenty-three years to obtain a "final" judgment against Iran that might be appealed. One of the more important facts concerning Iran's liability is that the great majority of the plaintiffs who filed legal actions against Iran did so long after the 10-year anniversary of the terrorist events on September 11, 2011 –

thousands of plaintiffs filed their legal actions long after the FSIA statute of limitations had accrued.

**A. The District Court Determined that New Federal Common Law Was Needed to Determine Who May Claim FSIA Solatium Wrongful Death Damages.**

Following a 2011 liability finding against Iran, the District Court issued several key Orders establishing a framework for the award of compensatory damages. Magistrate Judge Maas made a significant ruling that is challenged on this appeal:

> **Section 1605A effected a 'sea change' in suits against state sponsors of terrorism. Previously, to recover damages against such defendants, plaintiffs had to demonstrate their entitlement under state or foreign law. Now, such claims are subject to a 'uniform federal standard.' Courts therefore usually determine damages under Section 1605A by applying the legal principles found in the Restatement of Torts and other leading treatises.**

R&R dated July 30, 2012 at 5, MDL ECF #2618 (citations omitted and emphasis added) (A. 104). Magistrate Judge Maas determined that the FSIA provided a stand-alone personal injury and wrongful death cause of action (without any needed reference to traditional tort law) and, in creating federal common law, established a standardized per-person award scale[3] in awarding solatium damages to "immediate

---

[3] The District Court required no proof of injury for the solatium awards – only an "immediate family relationship" to the decedent. And the District Court did not require that the family member of the decedent be qualified as a legal representative of the decedent to have standing as a plaintiff, as required by state law; instead, each

family members" for wrongful death, with a complete disregard of applicable state wrongful death law (these findings, italicized rulings below, are challenged on this appeal) (A. 104):

| Relationship to Decedent | Solatium Award |
| --- | --- |
| Spouse | $12,500,000 |
| *Parent* | $8,500,000 |
| Child | $8,500,000 |
| *Sibling* | $4,250,000 |

On October 3, 2012, Judge Daniels adopted the July 30 R&R in an MDO (MDL ECF #2623, A. 123) and awarded over $7 billion (and $4.6 billion in punitive damages) to an initial group of 47 victims and their families in *Havlish*.

**B. Many Plaintiffs Are Added to the 9/11 MDL Litigation Against Iran Starting in 2015**

The number of plaintiffs pursuing damages against Iran multiplied factorially after 2015. For example, in *Burnett v. Islamic Republic of Iran*, No. 15-cv-9903, Judge Daniels issued major default judgments (*e.g.*, MDL ECF ##3666, 3986 and 4126) (A. 135, 150, 177), for *Burnett* plaintiffs who filed their legal actions against Iran on December 18, 2015 (A. 130), ultimately ordering Iran to pay over $6 billion in compensatory damages to more than 1,000 family members. The multi-

---

"immediate family member" was required to file their claims as an individual wrongful death plaintiff in violation of state law.

billion-dollar judgments subsequently issued to the *Burnett* plaintiff group were generally issued as "Partial Final [Default] Judgments." The *Burnett* action was filed 4 years after the FSIA's ten-year statute of limitations expired.[4]

In the *O'Neill v. The Republic of Iraq,* 04-cv-1076, action, thousands of plaintiffs were added to the MDL litigation after 2017 (and up to and through 2025), with the firm crowing that: "O'Neill Claimants include 3,000 family members and estate representatives of approximately 600 individuals who were victims of the September 11, 2001 terrorist attacks. . .The O'Neill Claimants have been awarded compensatory damages judgments totaling $21,372,196,237 under 28 U.S.C. §§1605A and 1605B against . . . Iran . . . for its role in sponsoring the 9/11 Attacks." *See U.S.A. v. Approximately 127,271 Bitcoin*, 25-cv-05745 (RPK) (EDNY), ECF #69 ("Notice of Verified Claim" filed on behalf of O'Neill claimants on January 19, 2026), and excerpts from the SDNY Docket Sheet for *O'Neill v. The Republic of Iraq,* 04-cv-1076 (GBD)(SN) (A. 63) showing that thousands of *O'Neill* plaintiffs were added to the litigation against Iran between May 17 and May 30, 2022.

---

[4] The District Court also expanded liability to include "latent injury" deaths— individuals who died years later from 9/11-related illnesses like cancer. The District Court awarded $7 million per decedent for pain and suffering for these severe latent injuries (MDL ECF ##9216, 9274, 10755 and 10813). The "latent injury" cases were filed more than a decade after the FSIA's ten-year statute of limitations expired. Courts in the Second Circuit have consistently held that equitable tolling is a remedy applicable only in "rare and exceptional circumstances." *Ellul v. Congregation of Christian Bros.*, 774 F.3d 791, 801 (2d Cir. 2014); *Smalls v. Collins*, 10 F.4th 117, 145 (2d Cir. 2021).

**C. Awards to the Plaintiffs Herein**

Plaintiffs herein were issued the following awards of wrongful death damages against Iran:

- **Wrongful Death Damages Framework:** Consistent with other 9/11 cases, the court applied a standardized per-person award for solatium damages: $12.5 million to surviving spouses and $8.5 million for children. Significantly, all the Plaintiffs herein are state-authorized heirs of their respective decedents (surviving spouses and children, *i.e.*, no non-heirs).

- **Specific Damages Awards:**
  - **Economic Damages:** Awarded to Plaintiffs' Estates for lost future earnings (MDL ECF ## 5376, 5449 and 10391).
  - **Solatium Damages:** Awarded to surviving spouses and children for their personal mental anguish and grief arising out their decedent's death (MDL ECF ## 5376, 5449, and ECF #54 in 02-cv-7209).
  - **Pain and Suffering:** Awarded to the Estates of those killed in the attacks for the decedent's conscious pain and suffering prior to death (ECF MDL #3226).
  - **Punitive Damages:** Awarded to each Estate in the amount of $6,880,000 each (ECF MDL #3226).

While most of the plaintiffs in this MDL litigation have not yet obtained satisfaction on any of their damage awards directly from Iran, the U.S. Government has created a fund to compensate the victims of state sponsored terrorism.

**D. Obtaining Satisfaction on Iran Awards – the USVSST Fund**

A 9/11 plaintiff holding a default judgment against Iran, a "state sponsor of terrorism," can recover money from the U.S. Victims of State Sponsored Terrorism Fund (USVSST)[5] (a limited-assets fund that pays claimants on a pro rata basis) by following a strict statutory process. Because Iran typically ignores U.S. court judgments, the Fund acts as a primary alternative for obtaining financial compensation. The Fund does not pay the full amount of most judgments; instead, it uses a pro-rata distribution system based on available assets.

- **Compensatory Damages Only:** The Fund only pays for compensatory awards. It cannot be used to recover punitive damages. 34 U.S.C. § 20144(j)(3).

- **Payment Caps:** Individual claims are generally capped at $20 million, and family group claims are capped at $35 million for calculation purposes. website, FAQ 4.1, http://www.usvsst.com/faq.php.

---

[5]    Official name and citation: "Justice for United States Victims of State Sponsored Terrorism Act, 34 U.S.C. § 20144 (2026)." The USVSST provides compensation to eligible U.S. persons who have obtained final judgments against any country officially designated by the U.S. State Department as a state sponsor of terrorism.

- **Pro-Rata Percentage:** In 2026, a sixth round of payments was authorized at a rate of approximately 5.24% for non-9/11 claimants and 1.64% for 9/11-related claimants. *See*

  *www.usvsst.com/Content/Documents/USVSSTFundRound6PaymentCalculation_911_Dec2025.pdf*

The "Partial [Final] Default Judgments" against Iran, which were not immediately appealable as of right, improperly allowed thousands upon thousands of non-heirs (under state law), and those filing untimely claims, to obtain and then file judgments with the USVSST and obtain substantial awards – awards that ultimately diluted and diminished the moneys available to "heirs" who had filed timely claims against Iran. *See* Declaration of Lisa O'Brien (A. 203). The USVSST pro rata payments are "based on the amounts outstanding and unpaid on eligible claims, until all such amounts have been paid in full" or the fund terminates in 2039. 34 U.S.C. § 20144(d)(3)(A)(i), (e)(6). *See* USVSST website, FAQ 4.1, http://www.usvsst.com/faq.php. That means payments to any individual claimant are dependent on other claimants' awards. Thus, all past, present or future filers against Iran will have their recoveries substantially diminished by non-heirs and untimely claimants who obtain default judgments that result in payment by the USVSST. With no reversal by this Court, these untimely plaintiffs and "non-heirs"

-12-

have and will continue to be awarded millions of dollars of damages by the USSVST through 2039 (based on default judgments against Iran under the FSIA).

Thus, Plaintiffs herein received substantially diminished wrongful death awards from the USVSST following the entry of default judgments granted in favor of thousands of untimely plaintiffs (those who filed actions after the statute of limitations expired) and thousands of "non-heirs" (under applicable state law). The charts below show exactly how this is happening, by comparing what the surviving dependent spouse and dependent three children of one decedent, Timothy O'Brien, received from the USVSST's "Sixth Distribution" in 2026 (there have been past distributions and there will be more expected future distributions), compared to what the "non-heirs" of Timothy O'Brien (his parents and siblings) likely received from this "Sixth Distribution"; these "non-heirs" filed Complaints against Iran in 2015 (more than 4 years after the FSIA statute of limitations had expired):

|  | | | | |
|---|---|---|---|---|
| **Non-Heirs of Timothy O'Brien Awarded Solatium Damages Against Iran & Resulting USVSST Awards from Latest (6th) Distribution** | | | | |
| **Date Action Filed (Complaint)** | **Action** | **Name (Relation to Decedent)** | **Solatium Award** | **USVSST 6th Distribution Individual Cap - $20M @ 1.64%** |
| **12/18/2015** *Burnett* ECF#1 | *Burnett v. The Islamic Republic of Iran,* No. 15-cv-09903 | Bernard J. O'Brien (Parent) | $8,500,000 7/31/2017 ECF#3666 | $139,400 |
| **12/18/2015** *Burnett* ECF#1 | *Burnett v. The Islamic Republic of Iran,* No. 15-cv-09903 | Marilyn O'Brien (Parent) | $8,500,000 7/31/2017 ECF#3666 | $139,400 |
| **12/18/2015** *Burnett* ECF#1 | *Burnett v. The Islamic Republic of Iran,* No. 15-cv-09903 | Robert L. O'Brien (Sibling) | $4,250,000 9/6/2019 ECF#5087 | $69,700 |
| **12/18/2015** *Burnett* ECF#1 | *Burnett v. The Islamic Republic of Iran,* No. 15-cv-09903 | Kathleen Tighe (Sibling) | $4,250,000 7/31/2017 ECF#3666 | $69,700 |
| **12/18/2015** *Burnett* ECF#1 | *Burnett v. The Islamic Republic of Iran,* No. 15-cv-09903 | Patrick O'Brien (Sibling) | $4,250,000 7/29/2019 ECF#4706 | $69,700 |
| **12/18/2015** *Burnett* ECF#1 | *Burnett v. The Islamic Republic of Iran,* No. 15-cv-09903 | Therese A. Visconti (Sibling) | $4,250,000 4/27/2018 ECF#3986 | $69,700 |
| **12/18/2015** *Burnett* ECF#1 | *Burnett v. The Islamic Republic of Iran,* No. 15-cv-09903 | Kevin O'Brien (Sibling) | $4,250,000 9/6/2019 ECF#5087 | $69,700 |
| No Action Found Yet | *[No Judgment Found Yet]* | Sean O'Brien (Sibling) | *[No DJ Found Yet]* | |
| **Total Solatium Damages Awarded to Non-Heirs & Resulting USVSST Awards from 6th Distribution** | | | **$38,500,000 [No Individual Over Cap]** | **$627,300** |

-14-

| State-Authorized Heirs of Timothy O'Brien Awarded Solatium Damages Against Iran & Resulting USVSST Awards from Latest (6th) Distribution | | | | |
|---|---|---|---|---|
| Date Action Filed | Action | Name (Relation to Decedent) | Solatium Award | USVSST 6th Distribution Family Cap - $35M @ 1.64% |
| 09/10/2002 *Burlingame* ECF#1 | *Burlingame v. Bin Laden,* No. 02-cv-7230 | Lisa O'Brien (Spouse) | $12,500,000 12/17/2019 ECF#5376 | $205,000 |
| 09/10/2002 *Burlingame* ECF#1 | *Burlingame v. Bin Laden,* No. 02-cv-7230 | John O'Brien (Child) | $8,500,000 12/17/2019 ECF#5376 | $139,400 |
| 09/10/2002 *Burlingame* ECF#1 | *Burlingame v. Bin Laden,* No. 02-cv-7230 | Madeline O'Brien (Child) | $8,500,000 12/17/2019 ECF#5376 | $139,400 |
| 09/10/2002 *Burlingame* ECF#1 | *Burlingame v. Bin Laden,* No. 02-cv-7230 | Jacqueline O'Brien (Child) | $8,500,000 12/17/2019 ECF#5376 | $139,400 |
| **Total Solatium Damages Awarded to Legal Heirs & Resulting USVSST Awards from 6th Distribution** | | | **$38,000,000 [Over Cap]** | ~~**$623,200**~~ **$574,000** |

Every bit of money paid to the untimely-filing non-heirs and non-dependents in this instance undeniably depleted the USVSST awards to the true heirs and dependents of 9/11 decedents who filed timely legal actions. Plaintiffs now fear that the District Court will continue to enter default judgments against Iran in favor of "non-heirs" and untimely plaintiffs and will refuse to vacate default judgments previously entered in favor of these groups of plaintiffs who are diminishing Plaintiffs' USVSST distributions now and in the future.

**E. Obtaining Satisfaction on Iran Awards – Pursuit of Iranian Assets**

The Plaintiffs herein have been denied a stay of the District Court's March 18, 2026 MDO, which has permitted the immediate release of AO 451 forms; these

-15-

forms allow many thousands of plaintiffs to register potentially time-barred judgments in the Eastern District of New York (EDNY) for immediate execution upon alleged assets of Iran (before this appeal is resolved). Now, with the ongoing pursuit of alleged Iranian assets (*e.g.*, Bitcoin in the EDNY), Plaintiffs herein, and other plaintiffs with timely claims who are fully authorized by applicable state law to receive wrongful death damages, risk having Iranian assets depleted by individuals who do not have a legal "right to relief" under the FSIA.

In sum, the Plaintiffs have already been injured and will be further injured by future USVSST diluted distributions and/or through any execution of assets owned by Iran; this process will now continue unless this Court overturns the erroneous default judgment rulings of the District Court.

## SUMMARY OF THE ARGUMENT

**I.    The District Court Improperly Granted Default Judgments to Plaintiffs Who Failed to Satisfy the FSIA Statute of Limitations**

The District Court's entry of default judgments in favor of plaintiffs who filed their actions long after the 10-year FSIA statute of limitations were errors of law that ignored the express gate keeping requirements of § 1608(e). Under the FSIA, no judgment by default may be entered against a foreign state unless the claimant "establishes his claim or right to relief by evidence satisfactory to the court." This statutory command creates an affirmative obligation for the court to ensure the legal viability of a claim, even in the absence of the defendant.

-16-

Many of the MDL plaintiffs cannot establish a "right to relief" because their claims were filed more than 10 years after the underlying incident on September 11, 2001. These filings, occurring after September 11, 2011, sit many years (and often more than a decade) outside the mandatory ten-year limitations period provided in 28 U.S.C. § 1605A(b). While the D.C. Circuit in *Maalouf v. Islamic Republic of Iran* held that a court cannot *sua sponte* dismiss a case against a foreign state on non-jurisdictional timeliness grounds, that holding does not authorize a court to affirmatively grant a final judgment on a claim that is legally dead on its face and challenged by plaintiffs adversely affected. Because the time-bar was patently obvious and precluded any "right to relief," the District Court was prohibited by § 1608(e) from entering many of the default judgments against Iran below.

## II. The District Court Wrongfully Awarded Wrongful Death Damages to Non-Heirs of Decedents in Violation of State Law

While 28 U.S.C. § 1605A(c) lists "solatium" as a recoverable category of damages, it does not define the class of persons eligible to recover it, nor does it override the overarching mandate of 28 U.S.C. § 1606. Section 1606 requires that a foreign state be held liable only "in the same manner and to the same extent as a private individual under like circumstances."

In New York, New Jersey, and Connecticut, the "mirror" for a private defendant is clear: where a decedent is survived by a spouse and children, parents and siblings are barred from recovering grief-related damages as a matter of law. By

granting solatium to these non-heirs under an Intentional Infliction of Emotional Distress (IIED) theory, the District Court created a "sovereign-only" liability that it would be impossible to assert against a private party in the Second Circuit:

1. *Section 1606 Controls the "Extent" of Liability*: As held in *Cassirer*, the FSIA does not allow federal courts to fashion federal common law to expand liability. Because a private individual in New York would owe zero dollars in grief damages to a parent or sibling when a spouse and children survive, the foreign sovereign's liability must similarly be zero.

2. *State-Law Priority is Substantive, Not Procedural*: The rules prioritizing spouses and children over parents and siblings are substantive "loss-allocation" rules. Under the Second Circuit's interest analysis, these rules must be enforced to prevent the unwarranted expansion of damages that § 1606 was designed to prohibit.

3. *IIED Cannot Bypass the Statutory Pecking Order*: The District Court's reliance on the Restatement (Second) of Torts to justify these awards constitutes an unauthorized end-run around the forum states' legislative decisions to limit the pool of claimants in death-related litigation.

**ARGUMENT**

In the Second Circuit, pure legal questions—including the interpretation of the FSIA—are reviewed *de novo*. Because Plaintiffs contend that what is at issue

on this appeal is: (1) the mandatory duty found in the text of § 1608(e) and the statute of limitations in § 1605A(b), and (2) the statutory interpretation of the text in §§ 1606 and 1605(A)(c), this Court must review these issues *de novo*. Issues of statutory interpretation are reviewed *de novo*. *Chevron Corp. v. Naranjo*, 667 F.3d 232, 239 (2d Cir. 2012).

## I. The District Court Erred as a Matter of Law by Holding that a Foreign State's Default Relieves the Court of Its Mandatory Gatekeeping Duty Under 28 U.S.C. § 1608(e).

When a plaintiff seeks a default judgment against a foreign state under the FSIA, 28 U.S.C. §§ 1330, 1602–1611, the district court must undertake an independent and searching review before entering judgment. *See, e.g., Fraenkel v. Islamic Republic of Iran*, 892 F.3d 1282 (D.C. Cir. 2018) (a district court must act as a conscientious gatekeeper, ensuring that judgments are not entered against foreign sovereigns based on unsupported or tenuous allegations). In the Second Circuit, courts have repeatedly emphasized that default judgments against foreign sovereigns are disfavored and may be entered only after the court is satisfied that jurisdiction, liability, timeliness, and damages are established by competent evidence.[6] This Circuit has recognized a strong policy interest in avoiding the entry

---

[6] *See Com. Bank of Kuwait v. Rafidain Bank*, 15 F.3d 238, 242 (2d Cir. 1994), which provides that the "satisfactory evidence" standard requires an independent judicial audit of the plaintiff's claims. This is a pure legal question that must be reviewed *de novo*, and this Court has held that the "satisfactory evidence"

of default judgments against foreign sovereigns. *See First Fidelity Bank, N.A. v. Gov't of Ant. & Barb.--Permanent Mission*, 877 F.2d 189, 196 (2d Cir. 1989) ("Courts go to great lengths to avoid default judgments against foreign sovereigns.").

Unlike ordinary civil cases, default does not constitute an admission of liability by a foreign sovereign. Section 1608(e) imposes an affirmative obligation on a district court to evaluate the merits of the plaintiff's claims. "No judgment by default shall be entered by a court of the United States or of a State against a foreign state … unless the claimant establishes his claim or right to relief by evidence satisfactory to the court." This obligation necessarily includes determining whether the claim is timely under the FSIA's ten-year statute of limitations, 28 U.S.C. § 1605A(b). FSIA terrorism claims are purely creatures of statute, and their availability is strictly defined by Congress. Because timeliness is a statutory condition of the cause of action itself, it must be affirmatively established before judgment may be entered. Because the limitations period is embedded in the statutory framework, it is not merely procedural—it defines whether a claim exists at all. The FSIA is a finely reticulated statutory scheme leaving no room for judicial freelancing in deciding whether to apply the statute of limitations as a matter of

---

requirement ensures a claimant's right to relief is established by the court, even when the sovereign defendant fails to appear.

discretion. The District Court failed to recognize the primacy of Congress—and its clear intent—in defining the metes and bounds of the specific cause of action added by § 1605A. There is no room in the FSIA for a judge-made rule of discretion in deciding whether to trigger *sua sponte* the FSIA limitations provision.

The Second Circuit has held that "default judgments are disfavored, especially those against foreign sovereigns." *First Fidelity Bank, N.A. v. Gov't of Antigua & Barbuda–Permanent Mission*, 877 F.2d 189, 196 (2d Cir. 1989). "Congress promulgated § 1608(e) to provide foreign sovereigns with the same protections from default judgments that the federal government enjoys under Fed. R. Civ. P. 55(e) [now 55(d)]. House Report 1487 at 26, 1976 U.S.C.C.A.N. at 6625." *Com. Bank of Kuwait v. Rafidain Bank*, 15 F.3d 238, 242 (2d Cir. 1994) (citation omitted); *see also Amernational Indus., Inc. v. Action-Tungsram, Inc.*, 925 F.2d 970, 975-76 (6th Cir.) (noting the "identical wording" of § 1608(e) and Rule 55(e)). Thus, the Second Circuit should use this mirror principle to justify a lenient standard for vacating a default judgment against a foreign state and a bar for limiting judgments to those entitled to a "right to relief." If Rule 55(d) allows the U.S. government more latitude to set aside a default or bar a claim to ensure a decision on the merits, § 1608(e) mandates that same judicial preference for foreign states. And it follows that courts should find good cause to vacate a default against a foreign state, or bar a claim

-21-

against a foreign state, more easily than they would for a private corporation, directly citing the special protection afforded to the U.S. government as the benchmark.

The Supreme Court has long held that statutes of limitations applicable to suits against the United States define the extent of the court's jurisdiction. *United States v. Kubrick*, 444 U.S. 111, 117–18 (1979). Failure to file against the United States within the prescribed period deprives the court of jurisdiction[7] and requires dismissal. *Soriano v. United States*, 352 U.S. 270, 276 (1957). The Second Circuit has consistently adhered to this principle. *See Celestine v. Mount Vernon Neighborhood Health Ctr.*, 403 F.3d 76, 82 (2d Cir. 2005). The same principle must be applied to foreign states under *Com. Bank of Kuwait v. Rafidain Bank, supra*. Because § 1608(e) requires the Court to act as a gatekeeper for the foreign sovereign's treasury—just as it does for the U.S. Treasury under Rule 55(d)—a default judgment entered without the rigorous "satisfactory evidence" review is "voidable" or "void" under Fed. R. Civ. P. 60(b)(4) or (6).

---

[7] In *Wiederspan v. Republic of Cuba*, 246 F. Supp. 3d 873, 875 (S.D.N.Y 2017), the court emphasized that sovereign immunity is jurisdictional and that the FSIA requires courts to independently verify whether the conditions for waiving immunity, including compliance with the statute of limitations, are met. This principle aligns with the broader framework of the FSIA, which consistently treats its provisions as jurisdictional and not subject to waiver by default. *Petersen Energía Inversora S.A.U. v. Argentine Republic*, 895 F.3d 194, 205 (2d Cir. 2018) (The FSIA "provides the sole basis for obtaining jurisdiction over a foreign state in the courts of this country." The Act states that a "foreign state shall be immune from the jurisdiction of the courts of the United States and of the States except as provided in sections 1605 to 1607.") (citations omitted).

**A. A Plaintiff Cannot Establish a "Right to Relief" Under § 1608(e) Where the Face of the Complaint Reveals the Action Is Barred by the Ten-Year Statute of Limitations in 28 U.S.C. § 1605A(b).**

Under Second Circuit precedent and the mandatory requirements of § 1608(e) (that a claimant establish a valid "claim or right to relief"), a district court must independently assess whether an FSIA claim is proper and timely before entering a default judgment and a district court must deny a default judgment where the claimant lacks standing or where the claim is time-barred, regardless of whether the foreign state appears or asserts the statute of limitations as an affirmative defense. Section 1608(e) requires plaintiffs to establish each element of liability with competent evidence.[8] Allegations alone are insufficient. The Second Circuit has explained that courts must require plaintiffs to present admissible evidence

---

[8]     Appellees have argued in this Court (ACMS#24.1 at 4) that § 1083(c) of the National Defense Authorization Act ("NDAA"), PL 181, 122 Stat. 3, extends the FSIA statute of limitations beyond ten years to *newly added plaintiffs* who filed their actions after the 10-year bar, but *§ 1083(c) merely provides a plaintiff with a timely § 1605(a)(7) action an extra sixty days to change their FSIA cause of action to a § 1605A cause of action.* Plaintiffs in such cases may move to have their actions treated as if they were originally filed under § 1605A thereby benefiting from the broader jurisdictional and substantive provisions of the new statute. This retroactive application effectively extends the statute of limitations for these already-filed cases, as they are treated as timely filed under the new framework. *Ben-Rafael v. Islamic Republic of Iran*, 718 F. Supp. 2d 25 (D.C. 2010). To satisfy the "relation back" principle of Fed. R. Civ. P. 15 (c)(1)(C), all "new" 9/11 plaintiffs would have to claim their failure to be added timely to the MDL litigation was the result of "mistake," which they have not and cannot claim here. Section 1083's "related action" language extends timeliness based on prior commencement but does not confer timeliness on newly added plaintiffs who have never filed a timely action.

supporting their claims even where the foreign state fails to appear. *See Com. Bank of Kuwait, supra,* 15 F.3d at 242.

**B. Because the Underlying Incident Occurred in 2001 and Many of the Complaints Were Not Filed Until Many Years after September 11, 2011, the District Court Lacked the Statutory Authority to Validate these Late-Filed Claims by Entering Default Judgments.**

Section 1605A(b) imposes a ten-year statute of limitations running from the date the cause of action arose, or from April 24, 1996, whichever is later. 28 U.S.C. § 1605A(b). Compliance with this limitation period is a requirement because § 1608(e) is not discretionary. The Second Circuit has emphasized that courts must ensure compliance with all statutory requirements under the FSIA before entering a default judgment. This includes determining whether the court has subject matter jurisdiction, which depends on the existence of an exception to sovereign immunity under the FSIA, and whether the claim is barred by the statute of limitations. *Vera v. Banco Bilbao Vizcaya Argentaria, S.A.*, 946 F.3d 120, 133-134 (2d Cir. 2019) ("The FSIA provides the "sole basis for obtaining jurisdiction over a foreign state in our courts," … and "must be applied by the District Courts in every action against a foreign sovereign.").

A failure to demonstrate timeliness independently bars relief. The explicit language of § 1605A(b) conditions the existence of the cause of action itself. Even where a statute of limitations is characterized as non-jurisdictional, courts must still enforce it when a failure to do so will injure other plaintiffs seeking damages from

-24-

a limited fund.[9]   In FSIA cases, Congress imposed an additional safeguard: a default judgment may be entered only if the plaintiff "establishes his claim or right to relief by evidence satisfactory to the court."   28 U.S.C. § 1608(e).   A time-barred claim cannot satisfy this requirement because it fails as a matter of law.   "Satisfactory evidence" of a "right to relief" is impossible to provide for a claim that has been legally extinguished by the 10-year limit.

Statutes of limitations are not waived by default, and courts may not enter judgment on time-barred claims against a foreign state.   *But see Maalouf v. Islamic Republic of Iran*, 923 F.3d 1095 (D.C. Cir. 2019) (while Section 1608(e) requires evidence satisfactory to the court before a default judgment can be entered, this requirement applies to the merits of the claim, *e.g.*, proving the foreign state's liability and damages, and does not empower the court to assert forfeited procedural defenses on behalf of the defaulting state).   The D.C. Circuit's holding in *Maalouf* may be distinguished, however, because that decision recognized that if the judicial interests of the court are implicated, a court may *sua sponte* dismiss a case in its

---

[9]     *See In re "Agent Orange" Prods. Liab. Litig.,* 996 F.2d 1425 (2d Cir. 1993). Although a class action case, the Second Circuit recognized the court's power to protect its jurisdiction and the settlement "res" from being undermined by external judgments.  A default judgment for a time-barred plaintiff is a windfall that unfairly prioritizes a legally weak claim over the meritorious claims of the broader group, violating the principle of ratable distribution.

discretion.[10] Plaintiffs here contend that the *Maalouf* decision: (1) is not binding precedent, (2) it failed to apply § 1605A(b) properly, and (3) it did not consider the harm of allowing never-ending, untimely claims to plaintiffs with timely claims.[11] Query: how long will this Court keep its doors open to 9/11 claims against foreign states in default?[12] Forever?[13] Is this fair to the plaintiffs who have asserted timely

---

[10] If an affirmative defense implicates values beyond the concerns of the parties, "courts of appeals, like district courts, have the authority--though not the obligation--to raise a forfeited timeliness defense on their own initiative." *Wood v. Milyard*, 566 U.S. 463, 473 (2012); *see also Arizona v. California*, 530 U.S. 392, 412 (2000) (forfeited *res judicata* defense may be raised *sua* sponte in "special circumstances"). This is especially true where a failure to enforce a statute of limitations will adversely affect other plaintiffs who have filed viable and timely claims.

[11] The D.C. District Court concluded on two prior occasions that 1605A's statute of limitations is jurisdictional. *See Valore v. Islamic Republic of Iran*, 700 F. Supp. 2d 52 (D.D.C. 2010) (court treated compliance with the statute of limitations under § 1605A(b) as a jurisdictional requirement), and *Murphy v. Islamic Republic of Iran*, 778 F. Supp. 2d 70 (D.D.C. 2011) (same).

[12] The *Maalouf* decision would allow a never-ending entry of default judgments against foreign states. Critically, *Maalouf* addressed only whether a district court may assert a limitations defense on behalf of a defaulting sovereign *sua sponte*, *without a record of proven harm to other plaintiffs*. Citing Supreme Court precedent, *Maalouf* recognized that in "distinct and narrow circumstances," in which the judiciary's own interests (and the interests of others) are implicated (923 F.3d at 1110-1112), a court may apply a statute of limitations *sua sponte*; most importantly, *Maalouf* did not address what should be done with valid objections by other plaintiffs being affected by untimely lawsuits (*see* fn. 13 below). *Maalouf* only would limit a court's power to *act as an advocate* where the judiciary's interests are *not* implicated; but here, the combination of a never-ending litigation that harms other plaintiffs with timely claims, directly implicates the judiciary's interests.

[13] *See Shiekh v. Republic of Sudan*, 308 F.Supp.3d 46, 55 (D.D.C. 2018) ("The possibility of nearly endless litigation takes on a new and more troubling dimension

claims and are now obtaining diluted recoveries from the USVSST and other potential asset executions due to the parasitic, piggybacking of untimely claimants? These parasitic, untimely-filed cases are now sucking money from those responsible hosts that they have piggybacked upon (A. 203).

Here, thousands of untimely plaintiffs are diluting the recoveries of plaintiffs with viable claims; the enormous and unmanageable size of the ever-expanding docket in this MDL litigation,[14] and the District Court's failure to enforce § 1608(e) and § 1605A(b) in favor of those plaintiffs who have filed timely claims, directly implicates the institutional interests of the judiciary.

---

when paired with the murky public policy consequences of enabling untimely judgments"), *rev'd on other grounds by*, *Maalouf v. Republic of Iran*, 923 F.3d 1095, 1114 (D.C. Cir. 2019) (the D.C. Circuit explicitly acknowledged that it could not recognize an argument by plaintiffs with timely claims, who alleged an adverse interest to that of untimely plaintiffs – since the recoveries of timely-filed plaintiffs were allegedly diluted in the USVSST Fund by the untimely claimants – "because the Fund was not addressed by the District Courts. We therefore have no record on which to assess the accuracy or import of the parties' claims."). Here we have such a record of the impact of never-ending litigation and its effect on USVSST awards as this record was made in the District Court. MDL ECF #8961.

[14]    In *Link v. Wabash R.R. Co.*, 370 U.S. 626 (1962), the Supreme Court noted that courts have always had the power to dismiss for failure to prosecute, and explained "[t]he power to invoke this sanction is necessary in order to prevent undue delays in the disposition of pending cases and to avoid congestion in the calendars of the District Courts." *Id.* at 629-30. This authority is an inherent power "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Id.* at 630-31. A level of control over the docket by this Court is desperately needed.

In sum, district courts may not presume timeliness merely because the foreign state has not appeared. To the contrary, § 1608(e) requires the court to determine affirmatively that the claim is timely, especially when untimely claims will dilute the recovery of those with timely claims. The foreign state's failure to assert the statute of limitations does not waive the defect and does not authorize the court to enter a default judgment. Reviewing the text of Section 1608(e) *de novo*, this Court should reverse and order the District Court to vacate the default judgments issued to any plaintiffs who failed to file their legal actions against Iran by September 11, 2011. Before entering a default judgment against a foreign sovereign, a district court must assess the timeliness of the claim as part of its obligation to ensure that the claimant has established their right to relief by evidence satisfactory to the court under *Com. Bank of Kuwait v. Rafidain Bank*, *supra*. This requirement is consistent with the FSIA's overarching purpose of balancing the rights of litigants with the protections afforded to foreign sovereigns in U.S. courts.

## II. The District Court Erred by Displacing State Law with Federal Common Law to Award Solatium Damages to Non-Heirs in Violation of 28 U.S.C. § 1606.

### A. Background on the FSIA.

The FSIA was enacted in 1976. The statute granted foreign states immunity from suit in the United States and withdrew that immunity for certain designated classes of cases. The legislative history of the FSIA statute reveals that it was

enacted to create "comprehensive rules" regarding the immunity of foreign states from suit and discontinue "the practice of judicial deference to suggestions of immunity from the executive branch." H.R. Rep. No. 94-1487 at 11 (1976). The legislative history of the statute explicitly shows that it was "not intended to affect the substantive law of liability" or "the attribution of responsibility between or among entities of a foreign state...." *Id.* As one sponsor of the statute described it, "this bill deals only with jurisdiction; the substantive law of liability would remain unchanged." 122 Cong. Rec. 17462 (June 10, 1976).

**B.    Section 1606 of the FSIA.**

Consistent with these principles, the FSIA contains a provision directing courts to existing traditional tort (state) law in determining the liability of a foreign state – once an exception to immunity is proven. Section 1606 of the statute provides, as follows (emphasis added):

> **As to any claim for relief** with respect to which a foreign state is not entitled to immunity **under section 1605** or 1607 of this chapter, **the foreign state shall be liable in the same manner and to the same extent as a private individual under like circumstances....**

Thus, the FSIA merely lifts the sovereign immunity of a state. Section 1606 says nothing about the law that ultimately will be applied against the foreign state. For the answer to that question, a court is required to turn first – as it does in § 1605(a)(2) and § 1605(a)(5) cases, as well as all other cases under § 1605 – to § 1606, which instructs that "the foreign state shall be liable in the same manner and

-29-

to the same extent as a private individual under like circumstances." 28 U.S.C. § 1606. The legislative history of § 1606 shows that this provision was intended to "make clear" what should have been true in any event: "if the foreign state, political subdivision, agency or instrumentality is not entitled to immunity from jurisdiction, liability exists as it would for a private party under like circumstances." H.R. Rep. No. 94-1487 at 22 (1976).

Consistent with its plain text, § 1606 has been read as a "portal" or "pass-through" to the causes of action (and traditional tort law) that would exist against a private individual in like circumstances. That is, when § 1605A lifts the sovereign immunity of a foreign state, § 1606 allows a plaintiff to bring any claim against the foreign defendant that the plaintiff could have brought in like circumstances were the defendant a private individual. Example: if the FSIA claim involves a death or solatium claim, a court must determine what already existing state law[15] controls the claim. The language of § 1606 is most logically read as manifesting Congress's intent that state law should be the source for deciding which individuals qualify to

---

[15] The U.S. Supreme Court, in *The Harrisburg*, 119 U.S. 199, 204 (1886), held: "by the common law no civil action lies for an injury which results in death." *Harrisburg* firmly established that wrongful-death remedies exist only by statute, not by common law. After *The Harrisburg*, states enacted wrongful-death statutes, beginning with statutes modeled on Lord Campbell's Act (1846). In *Mobil Oil Corp. v. Higginbotham*, 436 U.S. 618, 620–22 (1978), the Supreme Court emphasized that wrongful death actions are creatures of statute, and explained that where Congress has not acted, state wrongful-death law governs.

pursue and recover death or solatium damages in FSIA cases. As the U.S. Supreme Court held in *First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611, 621 (1983): "Where state law provides a rule of liability governing private individuals, the FSIA requires the application of that rule to foreign states in like circumstances." The Supreme Court more recently repeated that rule: "Section 1606 directs a 'pass-through' to the substantive law that would govern a similar suit between private individuals." *Cassirer v. Thyssen-Bornemisza Collection Foundation*, 596 U.S. 107, 117 (2022). And the Second Circuit issued a similar ruling in *Pescatore v. Pan Am. World Airways, Inc.*, 97 F.3d 1, 12 (2d Cir. 1996): "[T]he FSIA . . . operates as a 'pass-through' to state law principles."[16] Because §

---

[16] *See also Bettis v. Islamic Republic of Iran*, 315 F.3d 325, 333 (D.C. Cir. 2003):

> Of course, because these claims are based on a federal statute, their "extent and nature" are "federal questions." *Burks v. Lasker*, 441 U.S. 471, 476 (1979). But that does not, in this case, "authorize the federal courts to fashion a complete body of federal law." *Id*. at 477. Rather, as we note in section II.B., infra, because the FSIA instructs that 'the foreign state shall be liable in the same manner and to the same extent as a private individual under like circumstances," 28 U.S.C. § 1606, it in effect instructs federal judges to find the relevant law, not to make it.

Later in the *Bettis* opinion, the court revisited these themes, quoting § 1606 and emphasizing that "we have no free-wheeling commission to construct common law as we see fit. Rather, we are bound to look to state law in an effort to fathom the "like circumstances" to which 28 U.S.C. § 1606 refers. The statute instructs us to find the law, not to make it." *Id.* at 338. These passages from *Bettis* send a strong signal that § 1606 of the FSIA is incompatible with the creation of a federal common law of tort. *Bettis* was cited by *Hoglan v. Rafsanjani*, 759 Fed. Appx. 99, *104, 2019 WL 169203 (2d Cir. 2019) (emphasis added) ("We need not decide whether the

1606 demands that foreign states be treated identically to private defendants, courts uniformly apply the same state law that would govern a privately initiated tort action.[17] This structure ensures uniformity, predictability, and consistency in FSIA jurisprudence and acts as a barrier to the judiciary crafting law where no new law is needed.

## C.    The § 1605A(c) Terrorist Exception Cause of Action.

In 2008, Congress repealed § 1605(a)(7) (that portion of the FSIA that removes immunity from foreign states engaged in terrorist activity) and enacted 28 U.S.C. § 1605A.  Section 1605A(a), (c) provides that a "foreign state" is "liable" when:

1.    "the foreign state was designated as a state sponsor of terrorism"

2.    at the time of a "personal injury or death"

---

analytical framework employed in the D.C. Circuit is correct, because Plaintiffs-Appellants do not challenge the district court's determination that recovery for solatium damages in FSIA terrorism cases is limited to immediate family members or their functional equivalents."); *accord Fraenkel v. Islamic Republic of Iran*, 892 F.3d 348 (D.C. Cir. 2018).

[17]    Once jurisdiction is established under an FSIA exception, courts apply the substantive law that would govern a similarly situated private defendant. This requires the court to apply ordinary choice-of-law principles—typically those of the forum state. *See Cassirer, supra,* 596 U.S. at 117 ("A foreign state or instrumentality in an FSIA suit is liable just as a private party would be.  That means the standard choice-of-law rule must apply.") (citation omitted).

3.     "that was caused by an . . . extrajudicial killing . . . or the provision of material support or resources for such an act,"

4.     and the claimant is "a national of the United States." *Id*.

Section 1605A(c) now expressly creates a federal cause of action (removing immunity) directly against certain foreign states for acts of terrorism, including wrongful death.  While § 1605A(c) now makes foreign states liable for:

- personal injury or death,
- economic damages,
- solatium,
- pain and suffering and
- punitive damages,

it does not provide certain particulars needed to process claims arising out of traditional personal injury or death situations (*e.g.*, who has the standing to pursue and who may claim such damages).  Traditional (state) tort law applies to such issues under § 1606.  Significantly, neither § 1605A nor its legislative history indicates that it was intended to preempt existing state law.

Congress enacted § 1605A to provide victims and their families with a federal cause of action *and meaningful additional remedies*, including solatium and punitive damages.  *See* H.R. Rep. No. 110-477 at 1001 (2008).  Despite this FSIA development, § 1606 remains unequivocal: "*As to any claim* for relief with respect to which a foreign state is not entitled to immunity *under section 1605* or 1607 of this chapter, *the foreign state shall be liable in the same manner and to the same*

-33-

*extent as a private individual under like circumstances*." 28 U.S.C. § 1606 (emphasis added).

Congress chose to place the state-sponsored terrorism exception in § 1605 of the FSIA (and not create a new § 1612 or § 1613). By its terms, § 1606 applies to all § 1605 cases without distinction. For many years now, courts have read § 1606 as a pass-through to existing causes of action. There is nothing in the text of §1605 or § 1606 that suggests a different rule should be fashioned for cases brought pursuant to § 1605A.[18] These claims can include, in appropriate cases, state common and statutory law, federal statutory law, and even the law of a foreign state. Whether any of these sources of law will supplement the federal cause of action in

---

[18] *See Owens v. Republic of Sudan,* 864 F.3d 751 (D.C. Cir. 2017), where the D.C. Circuit summarized the pass-through doctrine, explaining that under the pre-2008 scheme "§ 1606 does not authorize a court to craft federal common law, but rather requires it to apply state law to suits under the FSIA." *Id*. at 809. The court reaffirmed that § 1606 supplied the rule of decision for liability and damages once immunity was waived. *See also Wamai v. Republic of Sudan,* 60 F. Supp. 3d 84 (D.D.C. 2014), where the court reiterated that under the pre-2008 terrorism exception, plaintiffs relied on state substantive law pursuant to § 1606. The court entered a default judgment and awarded wrongful death and related damages based on well-established FSIA terrorism damages frameworks derived from state tort law. *Id*. at 89–94. *Bland v. Islamic Republic of Iran,* 831 F. Supp. 2d 150 (D.D.C. 2011), where the court explained that FSIA § 1606 historically required application of state tort law once immunity was waived, and it evaluated damages for wrongful death, solatium, and emotional distress consistent with prior state-law-based FSIA cases. *Id*. at 154–58. *Valore v. Islamic Republic of Iran*, 700 F. Supp. 2d 52 (D.D.C. 2010), where the court held that while Iran was liable under the § 1605A federal cause of action, the court relied on earlier FSIA jurisprudence to assess wrongful death-type damages and solatium awards, noting the longstanding use of state tort principles in FSIA terrorism litigation. *Id*. at 73–78.

-34-

a particular case will depend on several factors, including the governing choice of law analysis and at least in the context of federal statutory claims, a careful inquiry into congressional intent. The crucial point, however, is that there is nothing in § 1605A that displaces the prevailing rule that traditional tort (state) wrongful death law and other state law should be applied to the § 1605A cause of action through § 1606 against foreign states. The District Court wholly failed to consider the effect of § 1606.

In sum, while § 1605A does create a new federal cause of action against certain foreign states who engage in terrorism, and while the new cause of action advises courts that punitive damages and solatium damages may now be awarded (even if not allowed under state law), § 1605A otherwise must still be read along with § 1606 of the FSIA to ensure that the new cause of action operates as "a 'pass-through' to state law principles." *Pescatore,* 97 F.3d at 12.[19] In its original and amended forms, the FSIA provides no guidance as to which family members can recover wrongful death and/or solatium damages (only that wrongful death damages may be pursued by a "legal representative"[20]) or who can bring a claim based on a

---

[19] In *Doe v. Bin Laden*, 663 F.3d 64, 69–70 (2d Cir. 2011), the Second Circuit reiterated that FSIA terrorism claims are governed by ordinary tort principles once jurisdiction exists, emphasizing that Congress intended courts to apply familiar liability standards rather than create special sovereign defenses.

[20] The legislative history of the FSIA supports this interpretation. *See* Comprehensive Antiterrorism Act of 1995: Report of the Committee on the

decedent's death – these items were and are left to traditional state tort law deemed to be applicable after a choice of law analysis (and *not* to the discretion of the district court). *See, e.g.*, *Est. of Hirshfeld v. Islamic Republic of Iran*, 330 F. Supp. 3d 107, 137 (D.D.C. 2018) (§ 1605A(c) "does not provide guidance on the substantive bases for liability to determine Plaintiffs' entitlement to damages").[21] If Congress wanted to increase the number of family members who might claim wrongful death and solatium damages against foreign states beyond what the states allow, Congress would have said so in the FSIA. Congress did not.

## D. The District Court Did Not Apply Choice-of-Law Principles & Instead Created Liability Forbidden by the Forum States.

Under the FSIA, a district court must apply the choice-of-law rules of the state in which it sits. For cases brought in the Second Circuit, this typically triggers New York's "interest analysis" for torts.

### 1. New York's Interest Analysis Favors Domiciliary Law for Loss Allocation.

---

Judiciary, H.R. Rep. No. 104-383 at 62 (1996) ("It is expected that a lawsuit proceeding under [§ 1605(a)(7)] will be brought either by the victim, or on behalf of the victim's estate in the case of death or mental incapacity."). Here, the District Court wrongfully required individual family members to assert wrongful death claims, even though these family members were not authorized by state law (as appointed personal representatives) to pursue such a claim. The result: chaos and an unwieldy docket.

[21]     *See The Foreign Sovereign Immunities Act, A Guide for Judges*, Federal Judicial Center (2d ed. 2018) at 23 ("state substantive law is controlling on most issues of liability in FSIA cases").

New York choice-of-law rules distinguish between "conduct-regulating" rules and "loss-allocating" rules (such as who can recover damages).

- **The Rule:** For loss allocation, New York applies the law of the common domicile of the parties or, where domiciles differ, the law of the place of the injury—unless another jurisdiction has a greater interest. *Neumeier v. Kuehner*, 31 N.Y.2d 121 (1972)

- **The Error:** The District Court bypassed this analysis. Had it applied the laws of New York, New Jersey, or Connecticut, it would have found that these states strictly limit wrongful death recovery to statutory heirs and bar "grief" wrongful damages for non-heirs.

### 2. State Law Expressly Prohibits Grief Damages for Non-Heirs.

By utilizing the Restatement (Second) of Torts to justify its awards to "immediate family members" rather than "heirs" (A. 104) the District Court ignored the "mirror" requirement of 28 U.S.C. § 1606.

### 3. IIED Cannot be Used to Circumvent Loss-Allocation Rules.

The District Court's use of the IIED cause of action to grant solatium to non-heirs is a "federal common law" invention. Under the Second Circuit forum states' laws, IIED is a gap-filler tort that cannot be used to evade specific statutory restrictions on who may recover for a death. Because a private defendant in New York, New Jersey or Connecticut would not be liable to a non-heir for wrongful death "grief" under an IIED theory, § 1606 forbids such liability for a foreign state.

The District Court's failure to perform a state-specific choice-of-law analysis resulted in the application of an unauthorized federal rule. Because New York, New

Jersey, and Connecticut all prioritize their own statutory schemes for death-related damages over generalized Restatement principles, the award to non-heirs must be vacated under *de novo* review.

The concept of recovery by "immediate family members" for solatium was apparently developed when courts compared § 1605A solatium damage claims to those pursued under an IIED claim as described in the Restatement (Second) of Torts, but this comparison is irrelevant in terms who has standing to pursue damages arising out of a death under state law. *See infra* fn. 23 and 24. It is significant that the phrase "immediate family member" is not found within the text of the FSIA itself (or applicable state wrongful death law). Instead, standing to recover wrongful death damages and the scope of who qualifies as an "immediate family member" were developed through *judicial interpretation* in FSIA cases, *i.e.*, through a creation of federal common law in violation of § 1606 using Restatement of Tort principles. Ultimately, while the term is not in the FSIA's text, subsequent cases and related federal programs[22] began to use the same term, without proper statutory or

---

[22] The USVSST Fund, which operates wholly on compensatory damage judgments from FSIA lawsuits, rightly or wrongly, now uses guidelines informed by these court decisions to define "immediate family member" for the purpose of distributing compensation. This definition from the USVSST Fund now specifically includes spouses, domestic partners, children, stepchildren, parents, stepparents, brothers, sisters, half-brothers, and half-sisters who the District Court claims have a right to death/solatium damages. The within Plaintiffs contend that the District Court's misapplication of the FSIA (its disregard of § 1606, Supreme Court and Second Circuit precedent, and the need to apply state law) has resulted in the

-38-

precedential authority, to describe who may recover damages for death or solatium claims under the FSIA terrorist exception.

By creating new federal common law (*viz.*, independently determining who may recover and pursue FSIA damages for death/solatium) and extending the federal common law into an area where there is already "readymade" law, *United States v. Kimbell Foods, Inc.*, 440 U.S. 715, 740 (1979), the District Court here misread the FSIA and "bypass[ed] its design." *Federal Republic of Germany v. Philipp*, 592 U.S. 169, 187 (2021).

### 4. Applicability of State Law to 9/11 FSIA Wrongful Death Claims.

The state laws typically applicable in the 9/11 litigation (mostly involving NY, NJ and CT decedents) all expressly prohibit wrongful death awards (and/or solatium awards) to any family members other than a surviving spouse and children when a decedent is survived by a spouse and children (*i.e.*, no awards to parents and siblings of a decedent under such circumstances).[23] And, for example, "the wrongful

---

USVSST Fund now wrongfully awarding damages to individuals not authorized by traditional tort law to receive such awards.

[23] Under New York's Estates, Powers, and Trusts Law, a cause of action to recover damages for wrongful death may only be brought by the distributees of the decedent. *See* N.Y. Est. Powers & Trusts Law § 5-4.4, subd. [a] (McKinney 1998); *see also DeLuca v. Gallo*, 287 A.D.2d 222 (2d Dept. 2001). New York law provides that where a decedent dies intestate and is survived by a spouse and issue, his spouse and issue are the sole distributees of the estate. *See* N.Y. Est. Powers & Trusts Law § 4-1.1(a)(1) (McKinney 1998). Where a 9/11 decedent is survived by a spouse and children, for example, parents and siblings of the decedent are denied

death statute [in New York] is the sole vehicle by which damages may be recovered for injuries resulting in death [of a New York decedent]." *Liff v. Schildkrout*, 49 N.Y.2d 622, 632 (1980); *see also McDougald v. Garber*, 73 N.Y.2d 246, 255 (1989) (emotional loss associated with death is not compensable absent statutory authority).

Hence, any individual not qualified as an heir under New York (or NJ or CT) law is not permitted to pursue any other traditional tort remedy for the death of a New York decedent, *e.g.*, IIED.[24] On matters of estate law and wrongful death

wrongful death damages under New York law, regardless of any claimed injury of the parents and siblings. *Id.* Also, New York State law gives the court-appointed personal representative of an estate the *exclusive* authority to bring an action for a wrongful death on behalf of a decedent's estate. *Id.*, § 5-4.1. In New Jersey and Connecticut, similar rules exist to limit wrongful death damages to prescribed "heirs" (to protect a surviving spouse and children) and such actions must be brought by an appointed personal representative. *See* N.J. Stat. Ann. § 2A: 31-4, § 3B: 5-3 and § 2A:31-2; Conn. Gen. Stat. § 45a-448(b), §§ 45a-437, *et. seq.*, and § 52-555. Thus, awarding money damages to individuals outside the state-prescribed and statutorily-defined "heirs of the estate" (*e.g.*, parents and siblings, where the decedent is survived by a wife and children), and allowing individual family members to pursue wrongful death claims, personally, *expressly violates applicable state law and state policy*.

[24] Non-heirs (*e.g.*, parents and siblings,) may plead IIED only where they allege independent, extreme, and outrageous conduct causing direct emotional injury to them. Where the IIED claim merely repackages grief over the loss of the decedent, it is dismissed at the pleading stage. The states involved here will dismiss emotional distress claims by family members as duplicative, holding that "emotional injuries resulting solely from the death of a loved one are not independently compensable." *Brown v. NYC Health & Hosps. Corp.*, 225 A.D.2d 36, 43 (1st Dept. 1996); *Johnson v. State of New York*, 37 N.Y.2d 378, 382 (1975) (same); *see also Hume v. Bayer*, 178 N.J. Super. 310, 319 (Law Div. 1981) (permitting non-heirs to pursue IIED claims based solely on emotional distress from a death would undermine the Wrongful Death Act's statutory scheme and IIED requires conduct far more

damages distribution, the laws of the domiciles of the decedents should have been addressed by the District Court, especially if an award of damages is requested on behalf of a family member in direct disregard of state law, state interests and state policy (protection of surviving spouses and children). *See Cassirer, supra,* 596 U.S. at 116*, citing Texas Industries, Inc.* v. *Radcliff Materials, Inc.*, 451 U. S. 630, 640 (1981): "we see scant justification for federal common lawmaking in this context. Judicial creation of federal common law to displace state-created rules must be 'necessary to protect uniquely federal interests.'"

### 5. Like the FTCA, the FSIA Requires the Application of Existing Law.

Finally, reading section 1605A and section 1606 as a pass-through to existing causes of action finds support in the courts' treatment of a similar statute. The Federal Tort Claims Act ("FTCA") removes the sovereign immunity of the United States for certain suits sounding in tort. 28 U.S.C. §§ 1346, 2671 *et seq.* The FTCA contains a liability provision that, in relevant part, tracks § 1606 of the FSIA almost word for word:

> The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a

---

egregious than the mere fact of death); *Ladd v. Douglas Trucking Co.*, 203 Conn. 187, 197 (1987) (Supreme Court declined to recognize claims by relatives for emotional distress absent an independently cognizable tort because Court has consistently refused to create broad new categories of recovery for emotional injuries derivative of another person's death).

-41-

private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages.

28 U.S.C § 2674.  Section 2674 of the FTCA -- enacted in 1946 -- served as the model for §1606 of the FSIA.  *See* 122 Cong. Rec. 17468 (June 10, 1976).[25]

As is true of § 1606 of the FSIA, courts have consistently read § 2674 of the FTCA to foreclose the creation of new causes of action or the reshaping of existing causes of action in claims against the United States.  *See Dorking Genetics v. United States*, 76 F.3d 1261, 1265 (2d Cir. 1996) (holding that section 2674 means that the FTCA "does not create new causes of action"); *Schwarder v. United States*, 974 F.2d 1118, 1124 (9th Cir. 1992) ("[S]ection 2674 of the FTCA . . . provides that, at a minimum, the government not be exposed to any greater liability than a private individual.").

However, the FTCA contains an additional provision, not present in the FSIA, that would narrow the causes of action that may be brought against a foreign state even further:

> [T]he district courts . . . shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would

---

[25] The only difference of substance in the relevant portions of the two statutes is the result of minor changes made in committee to conform the FSIA to international practice.  *See* H.R. Rep. 94-1487 at 9 (1976).

-42-

be liable to the claimant *in accordance with the law of the place where the act or omission occurred*.

28 U.S.C. § 1346(b) (emphasis added).

Courts have regarded this language as a specific instruction to apply the law of the state where the tort occurred as the substantive rule of decision to the exclusion of any other source of law in a claim under the FTCA. *See, e.g., Fed. Deposit Ins. Corp. v. Meyer*, 510 U.S.471, 477-78 (1994) (explaining that "we have consistently held that § 1346(b)'s reference to the 'law of the place' means law of the State," and therefore "federal law" may not provide the "source of liability" for a claim under the FTCA); *Delta Savings Bank v. United States*, 265 F.3d 1017, 1023 (9th Cir. 2001) (same).

The FSIA does not contain any language like the "law of the place" provision in § 1346(b) of the FTCA. The logical conclusion is that § 1606 of the FSIA prohibits the creation of new causes of action in claims against foreign states (just like § 2674 of the FTCA does for claims against the United States), but the FSIA is not confined to causes of action arising out of the law of the state where the tort occurred (because it lacks the choice of law provision in § 1346(b) of the FTCA). *See Harris v. Polskie Linie Lotnicze,* 820 F.2d 1000, 1003 (9th Cir. 1987) ("The FTCA contains an explicit choice of law provision; there is no such provision in the FSIA. The FTCA provision specifies that the United States is liable in cases in

-43-

which a private person "would be liable to the claimant in accordance with the law of the place where the act or omission occurred."  28 U.S.C. § 1346(b).

Unfortunately, the District Court failed to consider the effect of § 1606 and default judgment awards against Iran were issued to "non-heirs" in violation of state law;[26] these compensatory judgments to "non-heirs" have, in turn, caused the U.S. USVSST to issue substantial dollar awards to "non-heirs" that have seriously diluted USVSST awards to surviving spouses and children.  *See, e.g.*, Declaration of Lisa O'Brien dated March 28, 2023 (MDL ECF #8961, A. 203), which shows that many of the Plaintiffs herein are directly competing for wrongful death damages with the claims asserted by "non-heirs" under state law (parents and siblings of a decedent survived by a spouse and children).  Attorneys within the Department of Justice (which administers the USVSST), claim that the USVSST is "bound" to honor the compensatory damage judgments issued in the 9/11 MDL litigation, so if "heirs"

---

[26]     Fatal legal errors are undeniably present in the conclusions reached by the District Court.  First and foremost, the effect of § 1606 of the FSIA was not considered.  Second, Supreme Court and Second Circuit precedent interpreting § 1606's effect on FSIA claims was not considered.  Third, Supreme Court precedent has soundly rejected the District Court's expressed need to create a "uniform federal standard" for an FSIA terrorist cause of action – where existing state law was and is applicable.  And, finally, courts are not allowed to use the "Restatement of Torts and other leading treatises" to create a federal common law in the stead of applicable state law (the Second Circuit has refused to follow Restatement provisions where they conflict with controlling state law).  The "sea change" brought about by § 1605A, as claimed by Magistrate Judge Maas, was, in fact, nothing of the sort.

want to stop the USVSST awards to "non-heirs," heirs must prove that their state law argument is correct in the MDL litigation (ECF MDL #11488, ¶49).

While § 1605A(c) provides the *cause of action*, it does not grant the district court a "blank check" to ignore the substantive limitations on liability mandated by § 1606 and the Supreme Court's decision in *Cassirer*. *Cassirer*, 596 U.S. at 114, held that § 1606 requires a foreign state's liability to "mirror the rule that would apply in a similar suit between private parties." The District Court wrongfully held that it can liberally interpret the FSIA and award damages to "victims" (otherwise described as "immediate family members"[27]) by the judiciary developing a federal

---

[27] Some courts have held that under the FSIA, a solatium claim "is indistinguishable" from an intentional infliction of emotional distress (IIED) claim. *See, e.g., Est. of Hirshfeld v. Islamic Repub. of Iran*, 330 F. Supp. 3d 107, 140 (D.D.C. 2018). These courts have wrongfully applied the Restatement (Second) of Torts to these claims rather than applicable state law in violation of § 1606 and U.S. Supreme Court precedent. In these wrongfully decided cases, foreign states have been held liable for IIED under the FSIA if they "by extreme and outrageous conduct intentionally or recklessly cause[ ] severe emotional distress to another." Restatement (Second) of Torts § 46(1). The Restatement permits recovery by (1) members of the victim's immediate family (2) *who were present at the time of the conduct*. *See id.* § 46(2) (emphasis added); *Est. of Hirshfeld*, 330 F. Supp. 3d at 141. It is clear, however, that Restatement principles must be rejected when they conflict with applicable law. *Travelers Ins. Co. v. Carpenter*, 411 F.3d 323, 329 (2d Cir. 2005) (noting that Restatement principles cannot override established state precedent). New York courts apply a strict duplicative-claim doctrine. An IIED claim will be dismissed if it seeks damages recoverable under another theory or is based on the same conduct and injury as the wrongful death claim. *Stanley v. City of New York*, 2020 N.Y. Misc. LEXIS 20353 (Sup. Ct. N.Y. Cty. 2020); *Wolkstein v. Morgenstern*, 275 A.D.2d 635 (1st Dep't 2000). New York courts closely scrutinize IIED claims arising from incidents involving death, emphasizing that even severe grief does not alone satisfy the extreme-and-outrageous conduct requirement.

common law remedy, instead of applying applicable state law (significantly, the phrase "immediate family member" is not found anywhere within the FSIA or applicable state wrongful death law).  If state law (NY, NJ, CT) forbids grief damages for non-heirs in private litigation, the court cannot use federal common law or generalized Restatement principles to create a different outcome for a sovereign.

By using the Restatement to grant standing and damages to "non-heirs" who would be barred from recovery in a state-law suit against a private defendant, the District Court effectively created a "federal common law" of IIED for FSIA cases.  This is a reversible error for three reasons:

2. **Section 1606 is Not a Gap-Filler:** As *Cassirer* holds, § 1606 does not authorize federal courts to fashion their own rules of decision based on "general" principles or Restatements.  The court's duty is to determine which state's law applies and apply it faithfully.

3. **No Special Sovereign Liability:** By allowing non-heirs to collect solatium damages through an IIED claim that state law would not recognize for a private defendant, the court treated the sovereign worse than a private individual, directly contradicting the plain text of § 1606.

4. **IIED Cannot Bypass Statutory Limits:** Under the laws of the Second Circuit forum states, plaintiffs cannot use the "gap-filling" tort of IIED to evade the specific statutory limitations and standing requirements of wrongful death and survival statutes.

---

*Lauer v. City of New York*, 240 A.D.2d 543 (1st Dep't 1997).  State law was ignored in this respect.

Because the District Court failed to apply the "mirror" of state law as required by 28 U.S.C. § 1606, its award of damages to non-heirs must be vacated under a *de novo* standard of review.

**6. Section 1605A Does Not Require a Uniform Wrongful Death Remedy.**

Applying the law of the state of the decedent's domicile may lead to different recoveries for each of the plaintiffs. This is true, but there is nothing unusual or unfair about this result. It is not uncommon for courts to apply the substantive law of several different states in resolving mass tort cases. *See, e.g.*, *Pescatore v Pan Am*, *supra*, 97 F3d at 5 (2d Cir 1996) ("the applicable body of substantive law governing damages is the law of Ohio [the plaintiff's domicile and residence]"); *see also In re Air Crash Disaster at Stapleton Int'l Airport*, 720 F. Supp. 1445, 1448 n.3 (D. Colo. 1988) (noting that even though conflicts of law "may lead to the application of the law of different jurisdictions to different issues within the same case, the approach is widely applied to the multifaceted issues involved in aviation litigation"). There is no injustice in a plaintiff finding himself or herself subject to the laws of his or her state of domicile.

**7.     Federal Common Law Is Not Needed in Section 1605A Cases.**

Federal common law should only be employed in the rarest of circumstances. *See O'Melveny & Myers v. FDIC,* 512 U.S. 79, 87, 89 (1994) (noting that the "cases in which judicial creation of a special federal rule would be justified" are "few and

restricted" and "extraordinary" (quotation marks omitted)). A court should craft a federal common law rule only in cases where there are both "uniquely federal interests" and a significant conflict between some federal policy or interest and the use of state law. *Boyle v. United Tech. Corp.,* 487 U.S. 500, 506-508 (1988); *Woodward Governor Co. v. Curtiss Wright Flight Sys., Inc.*, 164 F.3d 123, 127 (2d Cir. 1999).

The principal rationale for the use of federal common law in § 1605A litigation is that it promotes "predictability and uniformity" in a sensitive area of jurisprudence. But an interest in uniformity standing alone is an insufficient basis for fashioning a federal common law remedy. Responding to a similar argument several years ago, the Supreme Court explained that: "Uniformity of law might facilitate the FDIC's nationwide litigation of these suits, eliminating state-by-state research and reducing uncertainty – but if the avoidance of those ordinary consequences qualified as an identifiable federal interest, we would be awash in 'federal common-law' rules." *O'Melveny*, 512 U.S. at 88. Consequently, courts have consistently rejected the contention that an interest in uniformity can support the fashioning of a federal common law rule in the absence of a "significant conflict" between state and federal law. *See B.F. Goodrich v. Betkoski*, 112 F.3d 88, 90 (2d Cir. 1997) ("absent a significant conflict between some federal policy or interest and

-48-

the use of state law, a mere federal interest in uniformity is insufficient to justify displacing state law in favor of a federal common law rule.").

Since the District Court awarded solatium damages to non-heirs in a manner inconsistent with the wrongful death statutes of New York, New Jersey, or Connecticut, it violated 28 U.S.C. § 1606 and the principles articulated in *Cassirer*. The FSIA does not authorize federal courts to create federal common law or to disregard state law limitations on recovery. Instead, courts must adhere to the substantive law that would apply to private defendants under like circumstances, including the limitations imposed by state wrongful death statutes.

### III. Plaintiffs Herein Have Standing to Challenge the Default Judgments to Other Plaintiffs, Especially Because Counsel for the Appellees Have a Patent Conflict-of Interest

The quasi-class action doctrine can be used to challenge default judgments or manage the distribution of assets in the Second Circuit based on a court's inherent equitable power. Maintaining the integrity of a limited asset pool is a paramount equitable concern. Mass tort litigation possesses the "essential characteristics" of a class action, triggering the court's fiduciary-like duty to oversee the equitable distribution of assets. As established in *In re Zyprexa Prods. Liab. Litig.*, 451 F. Supp. 2d 458 (E.D.N.Y. 2006), courts in the Second Circuit have the inherent equitable power to manage large-scale coordinated litigations as quasi-class actions. If the court is confronted by default judgments from plaintiffs whose claims may be

-49-

legally deficient (*e.g.*, time-barred by a statute of limitations), a judge may use the quasi-class action framework to stay the execution of those judgments or vacate them to preserve a limited pool of assets. This power is specifically intended to protect the interests of all claimants and ensure that a "limited fund"—whether statutory or *de facto*—is not exhausted by a race to the courthouse. In the context of a finite settlement pool or a defendant with limited assets, the satisfaction of default judgments for time-barred plaintiffs causes irreparable harm to the broader body of timely, meritorious claimants. *See In re "Agent Orange" Prods. Liab. Litig.,* 996 F.2d 1425 (2d Cir. 1993). Although a class action case, the Second Circuit recognized the court's power to protect its jurisdiction and the settlement "res" from being undermined by external judgments. A default judgment for a time-barred plaintiff is a windfall that unfairly prioritizes a legally weak claim over the meritorious claims of the broader group, violating the principle of ratable distribution.

The law firms for the Appellees represent "parents and siblings" (non-heirs) as well as surviving spouses and children (authorized state law heirs) on wrongful death claims, along with some plaintiffs who have timely claims and others who do not – a hopeless conflict of interest on this appeal. *See* Declaration of John F. Schutty dated April 6, 2026 (ACMS #47.2). Rule 1.7(a)(1) of the New York Rules of Professional Conduct, 22 N.Y.C.R.R § 1200.7(a)(1), provides that "a lawyer shall

-50-

not represent a client if a reasonable lawyer would conclude that … the representation will involve the lawyer in representing differing interests." Comment 1 to Rule 1.7 explains: "Differing interests exist if there is a significant risk that a lawyer's exercise of professional judgment in considering, recommending or carrying out an appropriate course of action for the client will be adversely affected or the representation would otherwise be materially limited by the lawyer's other responsibilities or interests."[28] Representing plaintiffs who are non-heirs and/or untimely claims required these firms to advocate positions that necessarily compromised the ability of these firms to provide zealous and conflict-free representation to its other clients (heirs and those plaintiffs with timely filed claims). *See, e.g.*, *In re World Trade Center Disaster Site Lit.*, 769 F. Supp. 2d 650, 656 (S.D.N.Y. 2011) ("A lawyer's first obligation is make any and all possible good-faith arguments on behalf of his or her clients—each and all of his her clients—that is, to *advocate* as effectively as possible on their behalves."). Judge Alvin Hellerstein had these post-litigation thoughts:

> Neither the Federal Rules of Civil Procedure nor any other rule or law specifically sets out the role of the court in a coordinated mass tort litigation . . . the court is the only participant to the proceedings that is

---

[28] This conflict-of-interest was brought to the attention of the District Court to no avail. *See* Motion to Set Aside re: Objection to R&R on March 28, 2023 (MDL ECF##8959, 8960, and 8961); MDO dated March 30, 2023 (MDL ECF#8973); Letter to Court re: Conflict of Interest dated April 5, 2023 (MDL ECF#8986) and Memo Endorsement re: Denying Letter Request on April 10, 2023 (MDL ECF#8997).

truly neutral, and only the court can ensure that conflicts arising in the representation do not unfairly harm plaintiffs, give rise to invidious distinctions among plaintiffs, or unduly advantage defendants.

*        *        *

In a mass tort litigation, where a lawyer represents hundreds or even thousands or clients, the task of providing such advice, in the best interests of each client, is daunting. How to ensure conflict-free representation, without intruding unduly on the lawyer-client relationship, is a difficult, but necessary, judicial task.

Alvin K. Hellerstein, *Presiding Over Mass Tort Litigation to Enhance Participation and Control by the People Whose Claims Are Being Asserted*, 45 Colum. J.L. & Soc. Problems 473, 477-478 (2012).[29] On any remand, this Court should order that independent counsel be appointed to ensure conflict-free representation for those plaintiffs with timely claims who are state-authorized wrongful death heirs who are not properly being represented in this Court or in the court below.

---

[29] In this Circuit, lawyers owe a duty of undivided loyalty to their clients that preclude the lawyer from doing anything adverse to that client's interests. *See Cinema 5 Ltd. v. Cinerama, Inc.*, 528 F.2d 1384, 1386 (2d Cir.1976); *Estates Theatres, Inc. v. Columbia Pictures Industries, Inc.*, 345 F. Supp. 93 (1972); *see also* Restatement (Third) of the Law Governing Lawyers, §128 (2000). Tribunals may raise the issue of attorney disqualification *sua sponte*, absent any party's request. This power is "incidental to all courts." *See, e.g., Ex parte Burr*, 22 U.S. 529, 531 (1824).

## CONCLUSION

For the reasons set forth above, this Court should reverse the District Court's March 18 MDO granting default judgments against Iran to: (1) individuals not qualified for awards of wrongful death solatium awards (non-heirs under applicable state law) and (2) individuals who failed to file actions against Iran on or before the accrual of the 10-year FSIA statute of limitations (September 11, 2011). Finally, independent counsel should be appointed to ensure conflict-free representation for those plaintiffs with timely claims who are state-authorized wrongful death heirs who are not properly being represented in the court below

Dated: May 7, 2026                    Respectfully submitted,

By: _John F. Schutty_

         John F. Schutty III, Esq.
Law Office of John F. Schutty, P.C.
Attorneys for the Plaintiffs-Appellants
445 Park Avenue, Ninth Floor
New York, New York 10022
Telephone: (646) 345-1441
Fax: (917) 591-5980
john@johnschutty.com

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation of Local Rule 32.1(a)(4)(A) because this brief contains words, excluding the parts of the brief exempted by FRAP 32(f): 13,925 words.

2. This brief complies with the typeface requirements of FRAP 32(a)(5) and the type-style requirements of FRAP 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 365 in 14-point Times New Roman font.

Dated: May 7, 2026

By: *John F. Schutty*
John F. Schutty III
*Counsel for Plaintiffs-Appellants*

**SPECIAL ADDENDUM**

**28 U.S. Code § 1605A – Terrorism exception to the jurisdictional immunity of a foreign state**

        \*             \*            \*

**(b) Limitations.** — An action may be brought or maintained under this section if the action is commenced, or a related action was commenced under section 1605(a)(7) (before the date of the enactment of this section) or section 589 of the Foreign Operations, Export Financing, and Related Programs Appropriations Act, 1997 (as contained in section 101(c) of division A of Public Law 104–208) not later than the latter of—

**(1)** 10 years after April 24, 1996; or

**(2)** 10 years after the date on which the cause of action arose.

**(c) Private Right of Action.** — A foreign state that is or was a state sponsor of terrorism as described in subsection (a)(2)(A)(i), and any official, employee, or agent of that foreign state while acting within the scope of his or her office, employment, or agency, shall be liable to—

**(1)** a national of the United States,

**(2)** a member of the armed forces,

**(3)** an employee of the Government of the United States Government, acting within the scope of the employee's employment, or

**(4)** the legal representative of a person representative of a person described in paragraph (1), (2), or (3), for personal injury or death caused by acts described in subsection (a)(1) of that foreign state, or of an official, employee, or agent of that foreign state, for which the courts of the United States may maintain jurisdiction under this section for money damages. In any such action, damages may include economic damages, solatium, pain and suffering, and punitive damages. In any such action, a foreign state shall be vicariously liable for the acts of its officials, employees, or agents.

(Added Pub. L. 110–181, div. A, title X, § 1083(a)(1), Jan. 28, 2008, 122 Stat. 338.)

**28 U.S. Code § 1608(e) – Service; time to answer; default**

*                              *                              *

(e)     No judgment by default shall be entered by a court of the United States or of a State against a foreign state, a political subdivision thereof, or an agency or instrumentality of a foreign state, unless the claimant establishes his claim or right to relief by evidence satisfactory to the court.  A copy of any such default judgment shall be sent to the foreign state or political subdivision in the manner prescribed for service in this section.

(Added Pub. L. 94-583, §4(a), Oct. 21, 1976, 90 Stat. 2894.)